UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 3:01CR149(AHN) |
| DEAN DEPRETA | : | October 20, 2006 |

**GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION FOR EARLY
TERMINATION OF SUPERVISED RELEASE**

By motion filed October 13, 2006, the defendant, Dean DePreta, seeks the early termination of his supervised release term. The Government's submits filing opposing the motion.

**I.     Preliminary Statement**

The defendant, Dean Depreta, was convicted of using extortionate means in an effort to collect an extension of credit (18 U.S.C. §§ 894 and 2), conspiring to engage in an illegal gambling business (18 U.S.C. §§ 371 and 1955), and filing a false federal income tax return (26 U.S.C. § 7206(1)).  Those charges stemmed from DePreta's involvement with the Gambino Family of La Cosa Nostra in Stamford, Connecticut in the late 1990's and into 2001.  From January 1997 through June 2001, he oversaw lucrative, a year-round sports bookmaking business that accepted wagers from bettors on football, basketball, baseball, and other sporting events.  In late 1999, a bettor did not pay a $40,000 gambling debt and DePreta threatened a debtor when trying to collect the debt.  As part of his efforts to collect the debt, DePreta brought the debtor to his boss, who explained that if anything happens in Stamford it only happens through him, the

debtor had to be pay the debt, and if anyone was to make threats or break legs it is only through him. PSR 14. DePreta was later recorded explaining to the debtor, "Normally we would come in and just f___ing wipe this place and leave, but we don't want to do that." PSR 15. In 1997, DePreta under reported nearly $100,000 in income, including money from the illegal gambling business.

The presentence investigation report calculated the defendant's range to be 33 to 41months' imprisonment. PSR ¶ 79. At the sentencing hearing on January 11, 2002, the Court sentenced the defendant to 39 months' imprisonment followed by three years of supervised release. The Court imposed special conditions of release, including that he not associate with members or affiliates of traditional organized crime, not participate in gambling activity, and not associate with those involved with illegal gambling.

After serving his prison sentence, on November 28, 2004, the defendant began the three-year term of supervised release. His supervision is set to end on November 27, 2007. Therefore, with approximately 13 months of supervision left, the defendant has moved for early termination of his supervised release pursuant to Title 18 U.S.C. § 3583(e)(1). As demonstrated below, the defendant's motion should be denied.

## II.  Discussion

### A.  Applicable Law

Title 18 U.S.C. § 3583 authorizes the Court to grant early termination of supervised release in certain circumstances. That section provides:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6)– terminate a term of supervised release and discharge the defendant released at any time after

    the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e)(1).

    The factors referenced above include, in part:

        (a) (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
           (2) the need for the sentence imposed -
               (B) to afford adequate deterrence to criminal conduct;
               (C) to protect the public from further crimes of the defendant; and
               (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
           (4) the kinds of sentences and the sentencing range established for-
               (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or
               (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;
           (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;
           (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct ....

18 U.S.C. § 3553(a).

"Subsection 3583(e)(2), in sum, requires the court to consider general punishment issues such as deterrence, public safety, rehabilitation, proportionality, and consistency, when it decides to modify, reduce, or enlarge the term or conditions of supervised release." United States v.

Lussier, 104 F.3d 32, 35 (2d Cir. 1997).

This Court, in denying a 77-year old polluter's request for early termination of supervision, noted that the Judicial Conference Committee on Criminal Law in March 2003 recommended nine specific factors in deciding whether to approve early termination of supervised release. United States v. Weintraub, 371 F. Supp. 164, 166 (D. Conn. 2005). Those factors include stable community reintegration, progressive strides toward supervision objectives and compliance with conditions, no aggravated role in the offense of conviction, no history of violence, and no identifiable risk to public safety. Id.

The decision to grant early termination of supervised release rests within the sound discretion of the court. United States v. Rasco, 2000 WL 45438 at *3 (S.D.N.Y., Jan. 19, 2000). Early termination, however, is "not warranted as a matter of course." United States v. Herrera, 1998 WL 684471 at *2 (S.D.N.Y., Sept. 30, 1998). "It may be justified 'occasionally' in cases of new or unforseen circumstances." Id. (citing United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)). "Occasionally, changed circumstances – for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release – will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." Lussier, 104 F.3d at 36.

The defendant has the burden to demonstrate that the circumstances warrant early termination. Rasco, 2000 WL 45438 at *3 ("Neither the statute nor the relevant case law places an affirmative obligation upon the government to make a showing of compelling penal need before a defendant will be required to complete a validly imposed term of supervised release. If

the defendant desires to have that period shortened he must show that the circumstances warrant it, not that the government cannot prove otherwise."). Where the defendant presents no new or exceptional circumstances, early termination is not warranted. Id. ("While Rasco's good behavior in prison and on supervised release is laudable, I am not satisfied that his conduct has been so unusual as to merit the early termination of his supervised release."); Herrera, 1998 WL 684471 at *2 ("Although Herrera seems to have adjusted well to probation, there are no new or exceptional circumstances sufficient to warrant a termination of his probation term."); United States v. Martin, 1992 WL 178585 at *1 (S.D.N.Y., July 13, 1992) ("The factors that led to imposition of the original sentence, however, remain unchanged. . . . This court does not find, nor does defendant even offer, the existence of new circumstances that merit a modification of the original sentence.").

"[M]odel prison conduct and full compliance with the terms of supervised release is what is expected of [defendant] and all others serving terms of imprisonment and supervised release and does not warrant early termination." Rasco, 2000 WL 45438 at *2; United States v. Medina, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (finding that defendant's compliance "with the terms of his supervision is commendable, but ultimately that is what is expected of him."). If simple compliance with the terms of supervised released were sufficient to justify early termination, "the exception would swallow the rule." Id.

### B. Defendant's Motion For Early Termination

The defendant does not offer any information justifying early termination of his supervised release. The defendant makes no assertion of extraordinary conduct or changed circumstances that make his supervised release unduly burdensome or harsh. See Defendant's Motion To Terminate Supervised Release (filing no. 33). The defendant relies on "successful

and uneventful service of his term and incarceration, coupled with the defendant's hitherto successful and uneventful service of his supervised release" warrants early termination. Id. at 3. He contends that he had a perfect institutional record while incarcerated, and since his release he has been employed, he has supported his family, and has complied with the terms and conditions of his supervised release. He claims the travel restrictions has impacted his ability to attend automobile actions because he has been unable to attend automobile actions outside Connecticut as he did not know in advance when the auctions would be held. Defendant's Motion at 2. He also asserts that when granted permission to travel outside the United States he returned as required without incident. His motion does not indicate whether the United States Probation Offices in Connecticut support his motion for early termination. The Government understand that the Probation Office does not support early termination in this case.

      The defendant's compliance with the terms of his supervision is not extraordinary. Rather, it is what the Court expected. The motion does not claim that the defendant has done anything extraordinary so as to warrant early termination. Furthermore, the defendant fails to argue that any particular hardship or injustice would result from his completing the term of supervised release. He can continue to seek the Probation Office's permission to travel outside Connecticut to attend automobile auctions. He gives no valid reason why he cannot timely seek permission to attend out of state auctions in advance as he apparently has done. Automobile auctions are not spontaneous events and, with planning and permission, the defendant can attend them.

      Aspects of DePreta's criminal conduct warrant continued supervision. First, he was an organizer and leader for more than four years of a lucrative, organized crime sports bookmaking business and the PSR properly gave him a four-level upward adjustment. PSR ¶ 13. Second, his

involvement with organized crime and his use of threats to collect a gambling debt shows DePreta's has a history of resorting to violence. This criminal conduct and association are serious, warranting supervision for the full amount of time the Court imposed. In the absence of a showing termination is justified, the defendant's motion for early termination should be denied. Herrera, 1998 WL 684471 at *2.

At DePreta's sentencing hearing, everyone recognized that he was at a cross-roads in his life. One road is working for a living and supporting his family. The other and wrong one, is continuing in criminal activity associated with organized crime. Staying under the Probation Office's supervising for the remaining 13 months significantly increases the likelihood that DePreta ends up on the correct road as he claims he has in his motion, and reduces the risk to society that he does not change paths.

**III.    Conclusion**

For the reasons discussed above, the Government respectfully requests that the Court exercise its discretion and deny the defendant's motion for early termination of his supervised release.

Respectfully Submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


PETER S. JONGBLOED
ASSISTANT UNITED STATE S ATTORNEY
Federal Bar No. Ct03192
157 Church Street, 23rd Floor
New Haven, CT 06510
Tel: (203) 821-3746

## CERTIFICATE OF SERVICE

      This is to certify that on October 20, 2006, a copy of this foregoing Government's Opposition was mailed, postage prepaid, to:

Harold James Pickerstein, Esq.
Pepe & Hazard
30 Jelliff Lane
Southport, Connecticut 06890

Keith Barry
United States Probation Officer
915 Lafayette Boulevard
Bridgeport, Connecticut

                                            _____
                                            PETER S. JONGBLOED
                                            ASSISTANT UNITED STATES ATTORNEY